# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | |
|---|---|
| DAVID E. STANLEY | CIVIL ACTION NO. 05-718 |
| VS. | SECTION P |
| TONY MANCUSO, ET AL | JUDGE TRIMBLE |
| | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is David Stanley's *pro se* civil rights (42 U.S.C. § 1983) complaint filed on May 9, 2005. At all times relevant to the claims made the basis of this suit, plaintiff was a pre-trial detainee housed at the Calcasieu Correctional Center (CCC).[1] Plaintiff complains of events that occurred at that facility, and names the following as defendants herein: Calcasieu Parish Sheriff Tony Mancuso; Calcasieu Warden Dan Burkhalter; Calcasieu Associate Wardens Scott Nugent and Charles Lavergne; Calcasieu Officers Prejean, David Dean, Gus Guidry, Fontenot, Domingue, and Cradeur; Calcasieu Shift Supervisors Bourgeous and Elizabeth Carrier; and, Calcasieu Nurse Kathy.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

In his May 9, 2005, complaint plaintiff alleged that (1) upon his July 31, 2004, confinement at CCC he was not provided with the prison's Rules and Regulations booklets; (2)

---

[1]Plaintiff is now incarcerated in the Federal Correctional Complex in Forrest City, Arkansas.

he had been subjected to unsanitary living conditions (such as exposure to vermin and bacteria, dirty sleeping mats and serving trays, extreme heat, second hand smoke, broken toilets filled with human waste); (3) he endured mass punishment (i.e., punishing all inmates due to the behavior of a single inmate); (4) he had been denied access to the law library; (5) he had magazines confiscated during lock-down searches; and, (6) he had been denied procedural due process (i.e., being placed in lock-down without proper notice and hearing, and that the grievance process was inadequate). As a result of the above, plaintiff seeks: a declaratory judgment finding, among other things, that the actions of the defendants herein violate his constitutional rights; injunctive relief preventing the defendants from subjecting future prisoners to mistreatment; compensatory damages in the amount of $500,000; and, punitive damages in the amount of $1,500,000.

On October 27, 2005, the undersigned completed an initial review of plaintiff's complaint and attachments. Having found the pleading deficient in certain aspects, the undersigned ordered plaintiff to amend his complaint and cure the deficiencies. [Doc. 9]. Among other things, the plaintiff was ordered to provide documentary proof that he exhausted administrative remedies in connection with the claims asserted. On December 6, 2005, plaintiff submitted a response [Doc. 13] to the amend order. In regard to the exhaustion issue, plaintiff stated that it was his "belief that in reality, no administrative remedy procedure exists at the 'CCC', . . . that any such reference to an administrative remedy system is without meaning or practice and in effect is non-existant (sic) . . . and what actually exists in the name of any existing administrative remedy procedure is a mockery and sham to any real administrative remedy procedure, and to follow what is available would be a waste of time and serve no purpose." [Doc. 13, p.2]. Plaintiff also states that his grievances "went ignored and unanswered . . . and that he is unaware of any other

steps available to him in the administrative remedy procedure, and even if there were a second step process available that they would be meaningless and a waste of time . . . ." [Doc. 13, pp. 2 & 3].

## LAW AND ANALYSIS

### Failure to Exhaust Administrative Remedies

Title 42 U.S.C. §1997e(a)[2] requires that prisoners exhaust the available administrative remedies prior to bringing a civil rights action with respect to prison conditions.     This exhaustion requirement is mandatory, "irrespective of the forms of relief sought and offered through the administrative avenues." *Booth v. Churner*, 121 S.Ct. 1819, 1825 n.6 (2001); *Porter v. Nussle*, 122 S.Ct. 983, 992 (2002) ("the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").   Further, a prisoner must exhaust all available administrative remedies prior to filing a civil rights action in federal court. *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998),*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir.1998); *see also Wright v. Hollingworth*, 260 F.3d 357, 358 (5th Cir. 2001) (holding that merely filing a grievance without further action does not demonstrate exhaustion of administrative remedies as contemplated by the PLRA).

The court takes judicial notice[3] that the Inmate Grievance Procedure (IGP) in effect at

---

[2]Section 1997e(a) provides,
(a) Applicability of Administrative Remedies--No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

[3]A copy of the CCC Inmate Grievance Procedure is on file in the matter of *In Re: Administrative Remedies Procedure*, United States District Court, Western District of Louisiana, Lafayette-Opelousas Division, Miscellaneous No. 00-99, Doc. 25. The document was filed on April 13, 2000 on behalf of the Sheriff of Calcasieu Parish in

CCC provides a three-tiered approach to grievance resolution. According to IGP Section 3(a), inmates are encouraged to attempt "informal resolution" of their grievances. Should attempts at informal resolution prove ineffective, inmates are required to file a formal grievance within thirty calendar days of the incident complained of. See IGP Section 3(b)(1)(a). This formal grievance is filed with the warden who forwards the complaint to the respondent named in the first step complaint. The respondent is required to provide a written answer to the inmate within fifteen days. IGP Section 3(b)(2)(a)(1). Should the inmate be dissatisfied with the response (or lack thereof), he is required to proceed to Step II of the process by filing a complaint with the warden. IGP Section 3(c)(1). The warden must respond to the complaint within twenty-five days. IGP Section 3(c)(2). If the inmate is dissatisfied with the Second Step response, he must proceed to Step III of the process by forwarding his complaint to the Chief of Corrections. IGP 3(d)(1).

In his complaint, the plaintiff admits that he did not proceed beyond the filing of an initial grievance. He appears to be claiming that the warden's failure to respond excuses him from having to satisfy the exhaustion requirement. However, the respondent's and/or warden's failure to respond to plaintiff's grievances did not prevent him from exhausting the administrative remedy procedure. Grievances are deemed denied when the time for the prison official to respond has expired. *See Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999). Therefore, once the response time had elapsed, the plaintiff's Step I request was deemed denied, and he should have sought relief at Step II of the administrative remedy procedure. Because plaintiff failed to present his claim at each step of the administrative remedy procedure available to him through the Calcasieu Corectional Center, his civil rights action is subject to dismissal under 42 U.S.C. § 1997e.

---

response to the court's Memorandum Order of March 24, 2000.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights action be **DISMISSED WITHOUT PREJUDICE** for failing to exhaust available administrative remedies prior to the filing of suit as mandated by 42 U.S.C. §1997e.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Lake Charles, Louisiana, this 27th day of December, 2005.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE